**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**


CHRISTOPHER K. MULLINS,

      **Movant,**

v.                                                  CASE NO. 2:04-cr-00011
                                                    CASE NO. 2:09-cv-00177

UNITED STATES OF AMERICA,

      **Respondent.**


<u>**PROPOSED FINDINGS AND RECOMMENDATION**</u>

    Pending before the court is Movant's Motion to Vacate, Set
Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 (docket #
140, "Motion").  By Standing Order, this action was referred to the
undersigned for submission of proposed findings and recommendation
for disposition.

    Movant, Christopher K. Mullins ("Defendant"), is serving a
sentence of 135 months, upon his conviction by a jury of aggravated
bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and use
of a firearm during and in relation to a crime of violence, in
violation of 18 U.S.C. 924(c)(1), to be followed by a five-year
term of supervised release.  (Judgment in a Criminal Case entered
June 27, 2007, # 111.)  He was also sentenced to pay restitution of
$34,821.46 and an assessment of $200.  <u>Id.</u>

    Defendant's direct appeal was unsuccessful.  <u>United States v.</u>
<u>Mullins</u>, No. 07-4748, 263 Fed. App'x 342, 2008 WL 344681 (4th Cir.

Feb. 7, 2008).  Defendant's conviction became final on the 90th day after the entry of the judgment of the Court of Appeals affirming his conviction and sentence, because he did not pursue review by the Supreme Court.  Rule 12, Rules of the Supreme Court of the United States.

The § 2255 Motion was executed by Defendant on February 23, 2009, and filed with the Clerk on February 26, 2009.  Accordingly, Defendant's Motion was timely filed.  At the court's direction, the United States filed a response (# 146), and Defendant filed a traverse (# 149).

Upon review of the grounds for relief and the filings by the parties, the undersigned determined that an evidentiary hearing was necessary to address Defendant's contention that, during trial, he expressed a desire to plead guilty but his court-appointed counsel refused.  (# 154.)  In conformity with Rule 8(c), Rules Governing Section 2255 Proceedings, counsel was appointed for Defendant (# 156), and a hearing was held on December 1, 2010 (## 165, 167-69).  Defendant, his two trial attorneys, and members of his family all testified.  (# 169.)  Defendant's attorney filed a post-hearing memorandum (# 173).  Thus there are documents filed by Defendant *pro se* (## 140, 149) and by his post-conviction appointed counsel, Thomas J. Gillooly (# 173).

<u>Facts of the Case and Procedural History</u>

The facts are set forth in the Fourth Circuit's decision

2

affirming his conviction.

> The morning of September 15, 2003, a masked, white-skinned man entered the Comfort, West Virginia branch of Whitesville State Bank. He pointed a small firearm at one of the bank employees and demanded that she fill a duffel bag with money. The employee filled the duffel bag with between $9,000 and $12,000; she also slipped in a red dye pack designed to explode within minutes or seconds of crossing the bank's threshold. The assailant left the bank with the filled duffel bag and entered a black Chevy Blazer that had damage to the left front bumper and tow hook.

> Law enforcement officials responding to the crime traced muddy tire tracks to a black Chevy Blazer that had been set on fire along a service road. Paint chip analysis revealed the Blazer had five layers of paint - two base gray/green layers, a red layer, a clear coat layer, and a top, black layer. A database search of the partial VIN number from the Blazer led to a red Blazer that had been reported stolen by Timothy Chambers. Witness testimony showed that approximately three years prior to the robbery Mullins acquired a red Blazer from Chambers. At some point while Mullins owned the Blazer, it was damaged in the front near the tow hook. Mullins had possession of the vehicle until the day before the robbery, but had not been seen with it since that day.

> Near the burned Blazer, officials found the .22 caliber firearm that had been used during the robbery. Ownership of the firearm was traced to Mullins.

> Two days after the robbery, Mullins' employee and mother-in-law both went to a local bank to deposit money given to them by Mullins and his wife. Bank officials noted the money was damp, had a powdery feel, and possessed a strong smell similar to bleach. In addition, white portions of the bills were unusually white in appearance and one of the bills had a pinkish tint to it.

Mullins, 263 Fed. App'x at 343-44.

Defendant received a grand jury target letter dated January 8, 2004 (# 1), and completed a financial affidavit (# 2). The grand jury indicted Defendant on January 30, 2004 (# 3). Michael L.

Desautels of the Office of the Federal Public Defender was appointed to represent him. At arraignment on February 11, 2004, he was released on a full surety secured bond in the amount of $16,080. (# 13, at 1.) Trial was set for April 12, 2004 (# 11).

On February 24, 2004, Defendant moved to continue the trial (# 20). The motion was granted and trial was set for May 3, 2004 (# 21). On April 7, 2004, Defendant again moved to continue the trial (# 25). The motion was granted and trial was set for May 24, 2004 (# 27).

On May 19, 2004, Defendant moved for a third time to continue the trial and signed and filed a waiver of his rights under the Speedy Trial Act, 18 U.S.C. § 3161 (## 36 and 37). On May 20, 2004, Defendant's attorney, AFPD Desautels, moved to be relieved as counsel for the reason that Defendant had retained S. Benjamin Bryant to represent him (# 38). The presiding District Judge, the Hon. John T. Copenhaver, Jr. conducted a hearing on May 20, 2004 (# 39), and denied the motions to continue and to be relieved as counsel (Order entered May 21, 2004, # 46). Judge Copenhaver informed Defendant that "it is permissible for Mr. Desautels and Mr. Bryant to both represent the defendant at trial." Id. "The defendant informed the court that he wishe[d] to proceed with both Mr. Desautels and Mr. Bryant." Id. Trial was held May 24 through May 27, 2004. (## 54-58.)

4

Grounds for Relief and Positions of the Parties

Defendant raises the following grounds for relief:

Ground one: The District Court erred when it failed to allow petitioner to have retained counsel of choice.

Ground two: Petitioner was refused his choice to plead guilty, due to appointed counsel's conflict of interest.

Ground three: Retained and appointed counsel both were incompetent and their performance was prejudicial when they failed to raise the fact that petitioner had a constitutional right to counsel of choice.

(Motion, # 140, at 3.)

The United States contends that Defendant was not denied effective assistance of counsel at any stage of the criminal proceedings and that he was represented by counsel of his choice. (# 146, at 15-20.)   The government's position with respect to Defendant's claims concerning a guilty plea were developed at the evidentiary hearing.

Defendant's Traverse argues that he was denied counsel of his choice and that the denial of a continuance of his trial was an abuse of discretion.  (# 149, at 1-5.)  He claims that the United States ignored his argument on denial of effective assistance of counsel.  Id. at 9-10.

**ANALYSIS**

Grounds one and three: Counsel of Choice/Ineffective Assistance

The transcript of the hearing on May 20, 2004, provides the facts for these grounds for relief.  Mr. Bryant advised Judge Copenhaver that he was first contacted by Defendant on May 18.

(Tr. Hrng, # 146-1, at 2-3.)  They met on May 19.  Id. at 3.

> MR. BRYANT: * * * I advised Mr. Mullins that I would
> agree to represent him.  He has retained me with
> considerable family assistance, Your Honor.  But I
> couldn't possibly effectively represent him if the Court
> continues with the trial date as scheduled of May 24th.
> I don't see how I could possibly do what needs to be
> done.  It's his indication that he does wish to proceed
> to trial.
>
> Those are the circumstances, and to bring this
> matter before the Court, I filed the motion and a notice
> of appearance that I would appear, provided the Court
> permits it in the circumstances.
>
> Mr. Mullins has related that he has had some
> communication difficulty with the current counsel and
> simply wishes to change.  He may not agree with all the
> advice he has been given.  And he executed a speedy trial
> waiver which is attached as an exhibit to our motion to
> continue.

Id.  Judge Copenhaver confirmed that Mr. Desautels was prepared for

trial.  Id. at 6.

Judge Copenhaver was appropriately concerned with the origin

of the money to pay retained counsel, because Defendant had enjoyed

the benefit of appointed counsel since indictment.  Id. at 3-4.

Mr. Bryant informed him that family members made "a substantial

contribution" and Defendant sold his truck for $5,000.  Id. at 4.

Mr. Bryant stated, "I'm not a particularly expensive counsel. * *

* [T]he fee is not particularly high."  Id. at 5.  He indicated

that Defendant and his wife contributed a total of $7,000, which

was about 40% of the fee, with the remainder from family members.

Id. at 5-6.

Judge Copenhaver then made his ruling:

THE COURT: It seems to me that with expert counsel already in the case, that there's no need to continue the trial. The Court is satisfied to have Mr. Desautels and Mr. Bryant as counsel in the case if that be the defendant's wish insofar as Mr. Bryant's presence is concerned.

This matter was originally set for trial on April 4th. The Court continued it in order to give Mr. Desautels further time in which to prepare it until May 3rd. Further time was again requested by Mr. Desautels, and the Court provided it and moved it to the 21st [sic; 24th]. It's time to try this case now. The defendant has been on bond for a considerable period of time. Mr. Desautels is ready to go to trial, and the Court has heard nothing that would indicate that there is any reason why the trial should not proceed on schedule. And, Mr. Bryant, you're welcome to come into the case if that be the defendant's wish, but the Court expects you to be ready to go to trial on Monday.

Id. at 6-7. Mr. Bryant requested a recess to consult with Defendant, which was granted. Id. at 7. After the recess, the defense offered nothing further, and Judge Copenhaver denied the motions to continue and to be relieved as counsel. Id. Then the following exchange took place:

MR. DESAUTELS: [I]t's my understanding that Mr. Mullins, given that I'm still in the case, Mr. Mullins wants Mr. Bryant in the case, to me, it's understood there will be two defense counsel. If the Court is okay with that, I just want to make sure we're all right.

THE COURT: I'm satisfied with that if Mr. Mullins is.

THE DEFENDANT: Yes, I am.

THE COURT: Is that satisfactory to you, Mr. Mullins?

THE DEFENDANT: Yes.

Id. at 8. This issue was not raised on direct appeal.

7

An appeal is a direct attack on a conviction or sentence; a § 2255 motion is a collateral attack on a conviction or sentence. Motions under 28 U.S.C. § 2255 "will not be allowed to do service for an appeal." Sunal v. Large, 332 U.S. 174, 178 (1947). Based on this well-established principle, nonconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings. Stone v. Powell, 428 U.S. 465, 478 n.10 (1976). The Fourth Circuit held, in United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999), that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."

To raise constitutionally-based grounds for relief in a § 2255 motion, a defendant has a "significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). He must meet the two-part "cause and actual prejudice" test. Id. at 167-68.

> To obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) "cause" excusing his double procedural default, and (2) "actual prejudice" resulting from the errors of which he complains.

Id. at 168. If the defendant fails to meet the actual prejudice

prong of the test, it is not necessary to address "cause."   Id. Cause for a procedural default can arise only from "something external to the defense," such as the novelty of the claim or ineffective assistance of counsel.  Mikalajunas, 186 F.3d at 493.

Defendant asserts that he was denied effective assistance of counsel when his attorneys failed to object to the purported denial of Defendant's counsel of choice.   The undersigned interprets Defendant's ineffective assistance of counsel ground as being the "cause" for his failure to raise the issue of choice of counsel.

The Supreme Court addressed the right to effective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984), in which the Court adopted a two-pronged test.   The first prong is competence; movant must show that the representation fell below an objective standard of reasonableness.  Id. at 687-91.  There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing court must be highly deferential in scrutinizing the performance of counsel.  Id. at 688-89.

> In order to meet the first prong, movant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Id. at 690.

The second prong is prejudice; "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The court may determine the prejudice prong prior to considering the competency prong if it is easier to dispose of the claim on the ground of lack of prejudice. Id. at 697.

The omission of counsel which Defendant alleges denied him effective assistance is the failure to advocate for Defendant's right to counsel of his choice. (# 140, at 12-13.) Defendant describes a "three-ring circus" with each participant having a different and personal interest. Id. at 13. He contends that Mr. Bryant was concerned with concealing from Judge Copenhaver the size of his fee ($15,000), which had been paid in full. Id. Defendant asserts that Mr. Desautels' interest was "to stay on board," and that his own interest was to have his counsel of choice. Id. He notes that neither of the attorneys raised his right to counsel of his choice before Judge Copenhaver. Id. at 14.

In his post-hearing memorandum, Defendant argues that there were no facts which would justify denying Defendant his right to counsel of his choice. (# 173, at 3.) He asserts that Judge Copenhaver failed to inquire concerning the factors which might have supported denial of the right, thereby making the denial

10

unsupported.  Id. at 4.  In a footnote, Defendant contends that the presiding District Judge "railroaded its preferred resolution of the situation, regardless of its perfunctory inquiry whether it was agreeable to everyone."  Id. n.4.

The parties agree that the Supreme Court case which bears on the issue of a defendant's right to retained counsel of his choice is United States v. Gonzalez-Lopez, 548 U.S. 140 (2006).  In that case, the Court held:

> The right to select counsel of one's choice, by contrast, has never been derived from the Sixth Amendment's purpose of ensuring a fair trial.  It has been regarded as the root meaning of the constitutional guarantee. [Citations omitted.] Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation.  Deprivation of the right is "complete" when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received.

548 U.S. at 147-48.  The Court then recognized and reaffirmed its prior holdings that trial courts may establish criteria for admitting lawyers to argue before them, that the right to counsel of one's choice does not extend to persons needing court-appointed counsel, that representatives must be members of the bar and free of conflicts of interest, and that trial courts may balance the right to retained counsel of choice with the needs of fairness and against the demands of the calendar.  Id. at 151-52.  The Court concluded, "This is not a case about a court's power to enforce rules or adhere to practices that determine which attorneys may

11

appear before it, or to make scheduling and other decisions that effectively exclude a defendant's first choice of counsel." Id. at 152.

Defendant's contentions fail to account for two points: he was represented by Mr. Bryant (and Mr. Desautels) at trial, and Defendant stated to Judge Copenhaver that the arrangement was satisfactory to him. (Tr. Hrn'g, # 146-1, at 8.)  Thus Defendant was represented by his counsel of choice, and after a recess during which he had an opportunity to confer with both attorneys, he informed Judge Copenhaver that he was satisfied.  The undersigned has reviewed the trial transcripts, which reveal that Mr. Bryant participated in matters preceding *voir dire*, the *voir dire* itself, cross-examined witnesses Robert Lee Milam, Jr., Arnie L. Gunnoe, Jr., Jack C. Remaley, Shirley Godbey, Dennie Klucarich, and Jack G. Grimes, conducted direct examination of defense witnesses Gary Dickens and Beth Ann Mullins (Defendant's wife), and gave closing argument.  The undersigned proposes that the presiding District Judge **FIND** that Defendant was not denied his Sixth Amendment right to retained counsel of his choice.

The undersigned proposes that the presiding District Judge further **FIND** that Defendant was not denied effective assistance of counsel when his retained counsel of choice and his court-appointed counsel failed to object and argue that Defendant had been denied his counsel of choice, and that the attorneys acted within the wide

range of professionally competent assistance.

Within his memoranda on counsel of choice, Defendant raises the issue of whether his May 21, 2004 motion for a continuance should have been granted.  (# 140, at 6; # 149, at 4-5.)  The denial of a continuance contravenes a defendant's Sixth Amendment right to counsel only when there has been "an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay." Morris v. Slappy, 461 U.S. 1, 11-12 (1983).  Moreover, a defendant must show both that the district court abused its discretion in denying a requested continuance and that the ruling "specifically prejudiced" his case. United States v. Stewart, 256 F.3d 231, 244 (4th Cir. 2001).  Defendant claims that the prejudice he suffered was denial of his counsel of choice.  Defendant relies heavily on the Supreme Court's decision in United States v. Gonzalez-Lopez, 548 U.S. 140 (2006), which was decided two years after Defendant was convicted.  Nonetheless, Gonzalez-Lopez recognized "a trial court's wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar [citing Morris]." 548 U.S. at 152.  The undersigned proposes that the presiding District Judge further **FIND** that it was not an abuse of discretion to deny Mr. Bryant's motion for a continuance in light of the two prior continuances, the late filing of the motion, and the satisfaction of Defendant with representation by his retained counsel of choice

13

and Mr. Desautels.

An alternative proposed finding is that Defendant has failed to establish "cause" for his prior failure to raise the issue of retained counsel of choice and thus has defaulted his first ground for relief.

Ground two: Proposed Guilty Plea

In his verified § 2255 Motion, Defendant claims that on the second day of trial, he informed his court-appointed counsel, Mr. Desautels, that he wished to plead guilty.  (# 140, at 10.)  He contends that Mr. Desautels told him that he "was a day late, because trial had commenced."  Id.  Defendant asserts that the United States had previously offered him a plea agreement which would have resulted in a sentence of five years, and that Mr. Desautels' failure to advise the government of Defendant's interest in a plea was ineffective assistance of counsel.

The United States' Response was deemed inadequate and the facts were developed at the evidentiary hearing.

Defendant's Traverse contradicts the government's position that a plea agreement was not offered with the submission of four properly notarized affidavits from family members, which state that they "recall Mr. Desautels apprising [Defendant] of a plea that had been offered by the government and that he would get a sentence of five (5) years, if he said that he committed the offense."  (# 149, Exs. A-D.)

14

The Court heard extensive testimony on this matter at the evidentiary hearing.  It is noteworthy that, as of May 21, 2004, at the hearing on the motions to continue and to be relieved, Mr. Bryant stated that "It's his [Defendant's] indication that he does wish to proceed to trial."  (Tr. Hrn'g, # 146-1, at 3.)

Former Assistant United States Attorney Stephanie Ojeda, who was lead prosecutor of Defendant, testified at the evidentiary hearing.  (Tr. Evid. Hrng., # 169, at 28.)  She stated that on May 3, 2004, she had a telephone conversation with Michael Desautels in which she asked if Defendant would be interested in pleading guilty if he were not required to plead guilty to the 18 U.S.C. § 924(c) charge.  (Gov't Ex. 3; Tr. # 169, at 32.)  Ms. Ojeda further explained to Mr. Desautels that she had no authority to dismiss the § 924(c) charge, but could "check into it if [Defendant were] interested."  (Gov't Ex. 3.)  Ms. Ojeda testified that a § 924(c) charge could not be dismissed without written authority of United States Attorney Kasey Warner.  (Tr. # 169, at 33.)

Mr. Desautels testified and confirmed that he and Ms. Ojeda had a telephone conversation on May 3, 2004, concerning a possible guilty plea, and her indication that she could "probably negotiate away the 924(c)."  (Gov't Ex. 1.)  Mr. Desautels apparently discussed the possible plea with Defendant on May 5 and 6.  (Gov't Ex. 2, at 1.)  Then Mr. Desautels wrote a letter to Defendant in which he explained "the sentencing possibilities - both after a

plea of guilty, and after a trial if [you] were to be found
guilty." Id.  The letter, which is clear and specific, warns
Defendant that a jury is "very likely" to convict him.  Id.  It
explains to Defendant that if he goes to trial and is convicted,
his sentence would be "between 141-155 months," but if he pled
guilty to the bank robbery charge, his sentence would be "78-97
months." Id. at 1-2.  Mr. Desautels' letter also explains that
although the bank robbery charge carries a likely sentence of 57-71
months if the § 924(c) charge remains, the sentence on the bank
robbery would increase to 78-97 months (with a gun enhancement) if
the § 924(c) charge were dropped.  Id.  At two points in the
letter, Mr. Desautels instructs Defendant that if he wants to
pursue the potential plea agreement, Defendant must advise him by
May 12, 2004. Id.  Moreover, Mr. Desautels warned Defendant that
"[i]f the prosecution does not hear by that time, the sentence
would be higher, even if you decide to plead guilty." Id. at 2.

Mr. Desautels testified that prior to trial, he has no
recollection of Defendant expressing a wish to plead guilty. (Tr.
# 169, at 21.)  After trial began, Mr. Desautels has no recall of
Defendant stating that he wished to plead guilty. Id. at 21-22.
Mr. Desautels stated that in his lengthy experience as a defense
attorney, if one of his clients said that he wanted to plead guilty
after trial began, he "would have contacted the prosecutor
immediately and conveyed that desire." Id. at 22.

16

Government Exhibit 4 (admitted under seal due to remarks concerning the victim) is a memorandum dated May 19, 2004, from Ms. Ojeda which requests authorization to dismiss the § 924(c) charge. The memorandum sets forth her estimate that if Defendant pled guilty to the bank robbery charge only, he would face a guideline sentence of 78-97 months; if the § 924(c) charge remained, Defendant would likely receive an additional seven years. However, the memorandum contains the following sentences:

> Given the lateness of Mr. Mullins' consideration of a plea agreement, I do not believe him entitled to the third point for acceptance. In which case, if Mullins would plea to count one, he is exposed to an imprisonment range of 63-78 months.

(Gov't Ex. 4, at 4.) The Chief of the Criminal Division (Philip Wright) and the First Assistant U.S. Attorney (Charles Miller) recommended approval. On May 19, 2004, the United States Attorney responded, "no action." There is no indication that a proposed plea agreement was ever prepared. Defendant does not claim that he expressed a willingness to plead guilty prior to trial.

Ms. Ojeda explained that Government Exhibit 4 was prepared out of concern for the victim teller's emotional state and the anticipated stress of testifying at trial. (Tr. # 169, at 34-35, 42-43.) She testified that a plea offer was "[a]bsolutely not" made to Defendant "once trial began and the teller testified." Id. at 39-40.

Retained counsel, Benjamin Bryant, testified that "Mr. Mullins

17

never told me that he wanted to plead guilty." <u>Id.</u> at 52.   In fact, Mr. Bryant entered the case because Mr. Mullins did not want to plead guilty.   <u>Id.</u>   When asked if he was "ever made aware that the defendant had changed his mind and now wanted to plead guilty to anything," Mr. Bryant answered, "No." <u>Id.</u> at 52-53.   He stated that neither Mr. Desautels nor Defendant indicated a desire that Defendant would plead guilty.   <u>Id.</u> at 53.

A succession of Defendant's family members testified.   Debra Mullins (wife of Defendant's brother, Ellis) stated that during the trial, at a meeting in a conference room, Defendant asked about pleading guilty and one of his attorneys said that "it was too late." <u>Id.</u> at 55.   Ellis Mullins testified that he, too, was in the meeting in the conference room, that Defendant asked the lawyer [probably Mr. Desautels] about a plea bargain, and the lawyer responded that "it was too late now." <u>Id.</u> at 67, 72-73.   Ellis Mullins stated that prior to this meeting, Defendant insisted that he was innocent. <u>Id.</u> at 75.   Dallas "Gene" Mullins (Defendant's uncle) testified that he smoked outside the courthouse with Mr. Bryant and he heard Defendant ask Mr. Desautels if he could plea bargain. <u>Id.</u> at 78.   Gene Mullins stated that Mr. Desautels "thought it was too late" but that he would get back to him. <u>Id.</u> Gregory Alan Moore (husband of Defendant's sister Lila) testified that he was at the meeting in the conference room, that "Chris asked about a plea," and that one of the lawyers said "it was too

late." Id. at 87-90.

Defendant testified that prior to trial, he had a conversation with Mr. Desautels about a possible plea offer "of five years and they was going to drop the gun charge." Id. at 92. He stated that on the second day of trial, at lunchtime, there was a large gathering in a conference room in the Federal Public Defender's Office. Id. at 93-95. Defendant testified that he asked Mr. Desautels, "could I take that plea deal. He said I was a day late on it." Id. at 95. Defendant stated that he also asked Mr. Desautels about a plea when they were outside. Id. at 98. Again, he testified that Mr. Desautels replied that "You're late." Id.

On cross-examination, Defendant testified that on the second day of trial (first day of testimony), he did not like the way things were going, so he decided that he wanted to plead guilty. Id. at 97. He admitted that throughout his trial, he insisted that he was not guilty. Id. at 99-100. Defendant also admitted that he told his lawyer (presumably Mr. Gillooley) that he drove the get-away car and that he knew that his buddy had the gun. Id. at 100-01. Defendant claimed that he does not remember receiving the May 7, 2004 letter from Mr. Desautels regarding sentencing ranges, and stated that his plea offer was for five years. Id. at 101. Defendant testified that he was having communication difficulties with Mr. Desautels, in that Mr. Desautels advised him to plead guilty, so he and his family hired Mr. Bryant. Id. at 102-03.

19

Nonetheless Defendant claimed that he asked Mr. Desautels, not Mr. Bryant, about pleading guilty.  Id. at 103.  He admitted that he never talked to Mr. Bryant about pleading guilty.  Id. at 104.

Lila Moore, Defendant's sister, testified that she was at the meeting in the conference room and Defendant asked about the plea bargain.  Id. at 106-07.  She stated that Mr. Desautels stated that it was "too late."  Id. at 107-08.  She further testified that before the meeting in the conference room, Mr. Desautels came out of the courtroom during the trial and told Defendant, in her presence, "They're going to offer you a plea."  Id. at 110-11.[1] She stated that Defendant and Mr. Desautels stepped away from her and talked.  Id. at 111.  Ms. Moore then stated that her brother told "all of us" that he wasn't going to plead guilty "at that point."  Id.  Then she repeated her testimony about the meeting in the conference room.  Id. at 113.  Ms. Moore agreed that she was a witness for the prosecution during her brother's trial.  Id. at 116.[2]

Mr. Desautels was recalled by the United States and testified

---

[1] The undersigned believes this statement to be not credible.  The first witness to testify at trial was the teller who was the primary victim of the bank robbery.  She was the person for whom the United States was most concerned due to the stress of testifying.  Her testimony concluded before the lunch break.  (Tr. Trial, # 104, at 50-74.)  In other words, Ms. Moore testified that after persuasive testimony by the teller, the United States was going to offer Defendant a plea agreement.

[2] Her testimony established that Defendant possessed the get-away vehicle (which was stolen), stored it for months in her garage, and then removed it shortly before the bank robbery.  (Tr. Trial, # 104-4 at 291 through # 104-5 at 303.)

that there were several meetings among the Mullins family with Defendant. Id. at 120. He repeated that he does not recall that Defendant ever told him, during any of those meetings, that he wanted a plea agreement. Id. He testified that if Defendant had said such a thing,

> it would have been my obligation to Mr. Mullins to convey his desire to plead guilty to the Government. So I would have done that. Regardless of whatever terms were put on a plea offer or not put on a plea offer, I would have conveyed that. It would have been my course of conduct. And I believe that's what I would have done at that time.

Id. at 121.

The United States also recalled Mr. Bryant. He repeated his testimony that he had no recollection of a meeting with Defendant and his family members at which Defendant asked for a plea agreement/offer/bargain. Id. at 122. He noted that such a discussion should have been private, with only Defendant and his attorneys present, to preserve the attorney-client privilege. Id. at 122-23.

The undersigned credits the testimony of Ms. Ojeda, Mr. Desautels and Mr. Bryant and proposes that the presiding District Judge **FIND** as follows:

1. Prior to trial, the United States never made an offer of a plea agreement which would expose Defendant to five years only. Prior to May 19, 2004, due to concerns for the victim teller, there was a possibility of a plea agreement in which Defendant would have pled guilty to bank robbery by the use of a dangerous weapon, and

the 18 U.S. § 924(c) charge would have been dismissed.  Mr. Desautels informed Defendant that it was likely that a jury would convict him.  Defendant did not pursue the possibility of a plea agreement and insisted to his lawyers and his family that he was innocent.  A written plea agreement was never prepared.

2.  On May 19, 2004, the United States Attorney took no action on the request for authority to dismiss the 18 U.S.C. § 924(c) charge.

3.  On or about May 19, 2004, Defendant and his family raised money to retain Mr. Bryant, Mr. Desautels moved to withdraw, and Defendant moved to continue the trial, which was then set to begin on May 24.

4.  Judge Copenhaver denied the motion for a continuance and Defendant agreed that Mr. Desautels and Mr. Bryant would jointly represent him at trial, which they did.  Mr. Bryant, Defendant's counsel of choice, was an active participant in the trial.

5.  During the trial, Defendant did not ask his attorneys if he could plead guilty.  His attorneys did not tell him that it was "too late."

The undersigned discredits the testimony of Defendant and the members of his family and proposes that the presiding District Judge **FIND** as follows:

6.  Messrs. Desautels and Bryant are experienced, respected and capable criminal defense attorneys who are knowledgeable of the obligations of a defense attorney to communicate with the

22

prosecution and the client concerning plea offers.

7.  If there had been a serious inquiry during trial of a possible plea, Messrs. Desautels and Bryant would have discussed the matter, first, with Defendant only and not with members of his family, and then would have communicated Defendant's wishes to the United States.

8.  Defendant's family has been supportive of him throughout the case.  It is unlikely that a few days after Defendant's family raised the money to hire Mr. Bryant, Defendant decided that he wanted to plead guilty.

9.  Defendant's testimony was particularly unconvincing.

10.  Defendant was not denied effective assistance of counsel with respect to a possible plea agreement.  His claim that he wished to pursue plea negotiations after trial began and after the victim teller testified, and that Mr. Desautels did not inform the government of his desire to plead guilty is not credible; even if Defendant had expressed such a desire, a plea to a charge carrying an exposure of only five years was not available.

    For the foregoing reasons, it is respectfully **RECOMMENDED** that the presiding District Judge deny Defendant's § 2255 Motion.

    The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant, and to transmit it to counsel of record.


<u>December 28, 2010</u>
        Date

                                Mary E. Stanley
                                United States Magistrate Judge

                    24